## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

**HUSCO AUTOMOTIVE, LLC,**

     **Plaintiff,**

vs.

**STACKPOLE INTERNATIONAL ENGINEERED PRODUCTS, LTD. d/b/a STACKPOLE INTERNATIONAL; STACKPOLE INTERNATIONAL POWDER METAL, LTD. d/b/a STACKPOLE INTERNATIONAL; STACKPOLE POWERTRAIN INTERNATIONAL USA, LLC; AND JOHNSON ELECTRIC NORTH AMERICA, INC.,**

     **Defendants.**

**Case No: _____**

**JURY TRIAL DEMANDED**

---

### ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Husco Automotive, LLC ("Plaintiff" and/or "Husco") files this Complaint against Stackpole International Engineered Products, Ltd. d/b/a Stackpole International ("SIEP"), Stackpole International Powder Metal, Ltd. d/b/a Stackpole International ("SIPM") Stackpole Powertrain International USA, LLC ("Stackpole Powertrain"), and Johnson Electric North America, Inc., ("JENA") (collectively "Stackpole" or the "Defendants") for direct, indirect, and willful infringement of United States Patent Nos. 8,056,576 (hereinafter "the '576 Patent") and 9,582,008 (hereinafter "the '008 Patent") (collectively the "Asserted Patents").

## BACKGROUND

1.     This patent infringement case centers around Husco's patented valve that is integral to the operation of an automotive pump component assembled in Stellantis' engines and on hundreds of thousands of vehicles in Michigan by Stellantis.

2.     Upon information and belief, Unick Corporation ("Unick"), a third-party Korean entity, manufactures a knock-off version of Husco's patented valve (the "Knock-off Valve"). Unick distributes their Knock-off Valve to the Defendants in the United States.

3.     The Knock-off Valve is used by Stackpole, a Johnson Electric North America ("JENA") subsidiary, in Stackpole's variable displacement oil pump that it sells to Stellantis (Stackpole's dual spring pump that includes the Knock-off Valve is referred to herein as "the Accused Pump").

4.     The Accused Pump is assembled in Stellantis engines and then on Stellantis' Ram 1500, Dodge Durango, Jeep Gladiator, Jeep Grand Cherokee, Chrysler Pacifica/Voyager, Ram ProMaster, Jeep Wagoneer/Grand Wagoneer, and Jeep Wrangler, with a substantial portion of engine and vehicle production for each of these vehicles taking place in Michigan.

5.     Before Stackpole began using the Knock-off Valve in the Accused Pump, Husco supplied the patented valves to Stackpole for inclusion in Stackpole's

variable displacement oil pump.

6.     In 2022, Stackpole stopped purchasing valves from Husco, and began purchasing the Knock-off Valves from Unick for use in the Accused Pump.

7.     Upon information and belief, Unick was provided the design for the knock-off valve by Stackpole so that Unick could design the Knock-off Valve for inclusion in the Accused Pump as a replacement supplier for Husco.

8.     As described in more detail below, the Defendants each play a role in the complex automotive supply chain that is involved with the infringement allegations in this Complaint.

9.     Upon information and belief, a division of Stackpole, Stackpole International Fluid Power Solutions ("Stackpole Fluid"), imports the Knock-off Valves from Unick into the United States in Washington.

10.     Upon information and belief, Stackpole transports the Knock-off Valves from Washington to Canada, where Stackpole manufactures the Accused Pump for import into the United States.

11.     Upon information and belief, Stackpole imports the Accused Pump into the United States from Canada

12.     Upon information and belief, Stackpole sells, offers for sale, imports, or otherwise provides the Accused Pump to at least two Stellantis' engine plants in Dundee and Trenton, Michigan.

13.    Additionally, upon information and belief, Stackpole also sells, offers for sale, imports, and otherwise provides the Accused Pump to Stellantis by importing the Knock-off Valve and/or the Accused Pump into the United States, transporting Knock-off Valve and/or the Accused Pump for storage in Texas, and then exports the Knock-off Valve and/or Accused Pump to Mexico for re-importation into the United States after the Accused Pump is incorporated into Stellantis engines and vehicles in Mexico.

14.    Upon information and belief, the Accused Pump, is incorporated into a Stellantis engine and a Stellantis vehicle that is imported back into the United States from Mexico.

15.    Re-importation of the Accused Pump occurs when a Stellantis engine or Stellantis vehicle with a Stackpole variable displacement oil pump is first manufactured in Saltillo, Mexico, and that engine or vehicle is imported by Stellantis back into the United States.

## **PARTIES**

16.    Plaintiff is a Wisconsin limited liability company, with its principal place of business at 2239 Pewaukee Rd., Waukesha, WI 53188.

17.    Upon information and belief, Defendant SIEP is a corporation organized and existing under the laws of British Columbia, Canada with several places of business including 2400 Royal Windsor Drive, Mississauga, Ontario,

Canada  L5J 1K7 and 1325 Cormorant Road, Ancaster, Ontario, Canada  L9G 4V5. SIEP is registered to do business as Stackpole International in Ontario, Canada.

18.     Upon information and belief, Defendants SIPM is a corporation organized and existing under the laws of British Columbia, Canada with several places of business including 2400 Royal Windsor Drive, Mississauga, Ontario, Canada  L5J 1K7 and 1325 Cormorant Road, Ancaster, Ontario, Canada  L9G 4V5. SIPM is registered to do business as Stackpole International in Ontario, Canada.

19.     Stackpole International's website identifies Stackpole International's global presence.

20.     Stackpole International's website also includes a products web page for its Fluid Power Solutions. *See* https://www.stackpole.com/products/fluid-power-solutions.html (last accessed May 26, 2023).

21.     Upon information and belief, Stackpole International is the trade name for all Stackpole Defendants, which was purchased by Defendant JENA in or around 2015.

22.     Under the name Stackpole International, Stackpole operates the above-identified separate facilities for a single purpose of procuring supplies, manufacturing automotive products, and selling those automotive products to Original Equipment Manufacturers ("OEMs"), including OEMs in Michigan.

23.     On information and belief, Defendant Stackpole Powertrain is a limited

liability company organized and existing under the laws of the State of Michigan, with its principal place of business at 47660 Halyard Drive, Plymouth, Michigan 48170, and its registered agent is Capitol Corporate Services, Inc. at 186 N Main St, 2nd Fl STE 1, Plymouth, Michigan 48170.

24.     On information and belief, Defendant JENA is a limited liability company organized and existing under the laws of the State of Connecticut, with its principal place of business in the State of Michigan at 47660 Halyard Drive, Plymouth, Michigan 48170, and its registered agent is The Corporation Company, 40600 Ann Arbor Rd., E STE 201, Plymouth Michigan 48170.

25.     Stackpole International does business in the United States and upon information and belief, maintain a United States presence at 3201 University Drive, Suite 350, Auburn Hills, Michigan 48326.

## JURISDICTION AND VENUE

26.     This action arises under the patent laws of the United States, 35 U.S.C. §§ 271, 281 and 283-85, among others. Plaintiff is seeking injunctive relief, damages, including treble damages, as well as attorney fees and costs.

27.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 (Federal Question) and 1338(a) (Patents).

28.     This Court has personal jurisdiction over Defendants SIEP and SIPM because each Defendant has continuous and systematic business contacts with the

State of Michigan, including maintaining a sales office in Auburn Hills, Michigan. Defendants SIEP and SIPM transact business within this District with several automotive Original Equipment Manufacturers and Tier 1 suppliers, including General Motors, Ford, Stellantis/FCA, Hanon Systems, Borgwarner, Magna, Schaefler, and ZF. Further, this Court has personal jurisdiction over Defendants based on the commission of one or more acts of infringement of the Asserted Patents in this District.

29.     Defendants SIEP and SIPM also have transacted business in the form of directed-buy agreements with Plaintiff in the District, and transacted as a third party in direct sourcing agreements with at least General Motors and Stellantis in this District.

30.     Defendants SIEP and SIPM sell products, including the Accused Pumps, into commerce and have minimum contacts in Michigan to satisfy the Michigan 'Long Arm' statute.

31.     This Court has personal jurisdiction over Defendant Stackpole Powertrain because Stackpole Powertrain has a continuous and systematic business contacts with the State of Michigan, including maintaining a registered address in Plymouth, Michigan. On information and belief, Defendant Stackpole Powertrain transacts business within this District with several automotive Original Equipment Manufacturers and Tier 1 suppliers, including General Motors, Ford, Stellantis/FCA,

Hanon Systems, Borgwarner, Magna, Schaefler, and ZF. Further, this Court has personal jurisdiction over Defendant Stackpole Powertrain based on its commission of one or more acts of infringement of the Asserted Patents in this District.

32.    Defendant Stackpole Powertrain directly conducts business extensively throughout the State of Michigan, by distributing, using, offering for sale, selling, and importing Accused Pumps in the State of Michigan and in this District.

33.    This Court has personal jurisdiction over Defendant JENA because JENA has continuous and systematic business contacts with the State of Michigan, including maintaining a registered address in Plymouth, Michigan. On information and belief, Defendant JENA transacts business within this District with several automotive Original Equipment Manufacturers and Tier 1 suppliers, including General Motors, Ford, Stellantis/FCA, Hanon Systems, Borgwarner, Magna, Schaefler, and ZF. Further, this Court has personal jurisdiction over Defendant JENA based on its commission of one or more acts of infringement of the Asserted Patents in this District.

34.    Defendant JENA directly conducts, or at least indirectly commits infringement of the Asserted Patents by making for distribution, selling, offering for sale, and selling the Accused Pump for use in the State of Michigan and in this District.

35.    As individually defined above, the Defendants have purposefully and voluntarily conducted business directly in the United States, and in the State of Michigan, including conducting business concerning the Accused Pumps, with at least one original equipment manufacturer (OEM) in the District and place the

Accused Pumps into the stream of commerce with the intention and expectation that they will be purchased and/or used by consumers in this District.

36. Venue is proper in the Eastern District of Michigan as to Defendants pursuant to at least 28 U.S.C. §§ 1391(c)(2) and (c)(3).

37. SIEP is subject to the laws applicable to the Eastern District of Michigan, therefore venue is proper in the District pursuant to 28 U.S.C. §§ 1391(c)(2) because SIEP has subjected itself to personal jurisdiction in this judicial district as described above.

38. Notwithstanding, SIEP is subject to suit in Eastern District of Michigan pursuant to 28 U.S.C. §§ 1391(c)(3) because non-resident companies in the United States may be sued in any judicial district.

39. SIPM is subject to the laws applicable to the Eastern District of Michigan, therefore venue is proper in the District pursuant to 28 U.S.C. §§ 1391(c)(2) because SIPM has subjected itself to personal jurisdiction in this judicial district as described above.

40. Notwithstanding, SIPM is subject to suit in Eastern District of Michigan pursuant to 28 U.S.C. §§ 1391(c)(3) because non-resident companies in the United States may be sued in any judicial district.

41. Stackpole Powertrain is subject to the laws applicable to the Eastern District of Michigan, therefore venue is proper in the District pursuant to 28 U.S.C. §§ 1391(c)(2) because, Stackpole Powertrain has subjected itself to personal jurisdiction in this judicial district as described above.

42.     JENA is subject to the laws applicable to the Eastern District of Michigan, therefore venue is proper in the District pursuant to 28 U.S.C. §§ 1391(c)(2) because JENA has subjected itself to personal jurisdiction in this judicial district as described above.

43.     Venue is also proper as to Stackpole Defendants and JENA under 28 U.S.C. §§ 1400(b) because each defendant either resides in the District, or maintains an established business presence and commits acts of infringement in the District.

44.     Defendants also are subject to suit in Eastern District of Michigan pursuant to 28 U.S.C. §§ 1400(b) because Defendants have committed acts of infringement in the District and each have a regular and established place of business, both as described above.

45.     Stackpole Powertrain also is subject to suit in Eastern District of Michigan pursuant to 28 U.S.C. §§ 1400(b) because it resides in the District, as described above.

46.     JENA also is subject to suit in Eastern District of Michigan pursuant to 28 U.S.C. §§ 1400(b) because it resides in the District.

47.     Venue also is proper in the Eastern District of Michigan as to SIEP and SIPM because each is a foreign defendant, and in a patent infringement case, foreign defendants can be sued in any district where they are subject to personal jurisdiction, such as this District.

48.     SIEP is a foreign defendant, and in this patent infringement case as a foreign defendant can be sued in any district where it is subject to personal

jurisdiction, such as this District as described above.

49.    SIPM is a foreign defendant, and in this patent infringement case as a foreign defendant can be sued in any district where it is subject to personal jurisdiction, such as this District as described above.

## ASSERTED PATENTS

50.    Plaintiff is the sole and exclusive owner, of all right, title, and interest in and to U.S. Patent No. 8,056,576 (hereinafter "the '576 Patent"). The '576 Patent is attached as Exhibit A.

51.    The '576 Patent is valid, enforceable, and was duly issued by the United States Patent and Trademark Office on November 15, 2011 in full compliance with Title 35 of the United States Code.

52.     Plaintiff possesses all rights of recovery under the '576 Patent, including the exclusive right to recover for past, present and future infringement.

53.    Defendants directly and/or indirectly infringe at least one claim of the '576 Patent as explained below.

54.    The '576 Patent relates generally to valve technology.

55.    Specifically, the '576 Patent relates to a hydraulic valve that has a valve body with a bore into which an inlet port, an outlet port, and a workport. A valve spool is slideably received within the bore. The valve spool has a first position that provides a path between the inlet port and the workport, and a second position that provides another path between the outlet port and the workport. Inlet port pressure

tends to move the valve spool into the first position and outlet port pressure tends to move the valve spool into the second position. A linear actuator is coupled to the valve spool by a spring, thereby biasing the valve spool toward the first position. Another spring biases the valve spool toward the second position. *See* Abstract, '576 Patent.

56.     The '576 Patent claims recite a hydraulic valve comprising a valve body with a bore and having an inlet port, and outlet port, and a workport in communication with the bore, a valve spool connecting the inlet port, outlet port, and workport.

57.     Plaintiff is the sole and exclusive owner, of all right, title, and interest in and to U.S. Patent No. 9,582,008 (hereinafter "the '008 Patent").

58.     The '008 Patent is valid, enforceable, and was duly issued by the United States Patent and Trademark Office on February 28, 2017 in full compliance with Title 35 of the United States Code.

59.      Plaintiff possesses all rights of recovery under the '008 Patent, including the exclusive right to recover for past, present and future infringement.

60.     The '008 Patent is attached as Exhibit B.

61.     The '008 Patent relates generally to systems incorporating valve technology.

62.     Specifically, the '008 Patent relates to fluid pump pressure regulation

systems and methods have a valve body with a bore and a valve spool. The valve spool connects a first and second port to a third port in different valve spool positions. The first port is in fluid communication with an output of a fluid pump to receive a first fluid pressure from the fluid pump. The second port is in fluid communication with a fluid reservoir. The third port is in fluid communication with a fluid pump input to provide a second fluid pressure to the fluid pump to control the first fluid pressure from the fluid pump. A linear actuator is adjacent the valve body, with a first spring and a second spring biasing the valve spool in a first or second direction. *See* Abstract, '008 Patent.

63.     Defendants directly and/or indirectly infringe at least one claim of the '008 Patent as explained below.

## ACCUSED INSTRUMENTALITIES

64.     Upon information and belief, Unick manufactures for distribution, offers for sale, and sells in the United States a valve for use in a variable displacement oil pump (the "Knock-off Valve").

65.     Upon information and belief, Stackpole provided Unick the design for the Knock-off Valve so that Unick could supply a replacement valve (the Knock-off Valve) to be used in Stackpole's variable displacement oil pump (the "Accused Pump").

66.     The Accused Pump is assembled on Stellantis' Ram 1500, Dodge

Durango, Jeep Gladiator, Jeep Grand Cherokee, Chrysler Pacifica/Voyager, Ram ProMaster, Jeep Wagoneer/Grand Wagoneer, and Jeep Wrangler.

67.     The Accused Pump is assembled or planned to be assembled on 120,000 to 665,000 vehicles per year, until 2030, on a total of over 4,000,000 vehicles.

68.     Plaintiff notified Stackpole of Plaintiff's patent in a presentation dated September 18, 2013, when Plaintiff disclosed its "Patented Dual Spring System for controlling Pump Displacement" and its "Patented ball bearing system" to Stackpole.

69.     Upon information and belief, under the direction and control of Stackpole, Stackpole's Fluid Power Solutions division imports Knock-off Valves in the United States in Washington.

70.     Stackpole transports the Knock-off Valves to Canada, where Stackpole manufactures the Accused Pump for import into the United States.

71.     Upon information and belief, Stackpole sells, offers for sale, imports, or otherwise provides Accused Pumps to at least one OEM (Stellantis) in Redford, Michigan.

72.     Upon information and belief, Stackpole sells, offers for sale, imports, and otherwise provides the Accused Pump to at least Stellantis when it imports the Knock-off Valve to the United States from Canada, transports the Knock-off Valves

for storage in Texas, and then exports the Knock-off Valve for re-importation into the United States after the Knock-off Valves are incorporated into Accused Pumps and the Accused Pumps are incorporated into Stellantis engines and vehicles before returning to the United States.

73.     Re-importation of the Knock-off Valves in Accused Pumps occurs when the Accused Pumps are assembled into Stellantis engines and vehicles in Saltillo, Mexico, and those engines and vehicles are imported by Stellantis back into the United States.

74.     Stackpole commits acts of contributory infringement in this District, by importing the Knock-off Valve into the United States, shipping them to Canada, assembling the Knock-off Valves into the Accused Pump and then shipping the Accused Pump into this District for assembly in Stellantis engines.

75.     Stackpole commits acts of induced infringement in this District, including but not limited to inducing infringement by downstream Stackpole customers, partners, affiliates and/or end-users through their use of the Knock-off Valves and Accused Pumps.

76.     The Defendants directly, indirectly and willfully infringe the Asserted Patents.

77.     The court, in exceptional cases, may award reasonable attorney fees to the prevailing party. 35 U.S.C. § 285.

78.    This case against Defendants stands out from others with respect to the substantive strength of a Plaintiff's claims against any consideration of the defenses from Defendants – which there are none.

79.    Considering the law as applied to the facts of the case, as well as the unreasonable manner in which Defendants conducted their business regarding the Knock-off Valve and Accused Pump, damages for willful infringement are warranted.

80.    Considering the totality of the circumstances regarding Stackpole's knowledge of the Accused Patents and blatant disregard for the Accused Patents even after notice by the September 2013 presentation, and considering Unick's use of Plaintiff's design from Stackpole to supply the Knock-off Valve, and considering Stackpole's ongoing infringing conduct, damages for willful infringement are warranted.

## COUNT I
## (INFRINGEMENT OF THE '576 PATENT)

81.    Plaintiff refers to and incorporates the allegations in Paragraphs 1 - 80, the same as if set forth herein.

82.    Stackpole has infringed and continues to infringe one or more claims of the '576 Patent by making, using, selling, offering for sale and/or importing into the United States products and systems, including but not limited to the Knock-off Valve and Accused Pump without permission from Husco. Stackpole is liable for

16

infringement of the '576 Patent pursuant to 35 U.S.C. § 271(a).

83.     Stackpole has induced and encouraged direct infringement of the '576 Patent by its customers, resellers and end users by directing them and encouraging them to make, use, sell, and offer to sell within the United States and/or import into the United States one or more devices that embody the '576 Patent and that incorporate the products identified above. Stackpole therefore is liable for indirect infringement under 35 U.S.C. § 271(b).

84.     Stackpole has and continues to contributorily infringe and will continue to contributorily infringe one or more claims of the '576 Patent. The claims of the '576 Patent are directly infringed by Stackpole's and its customers, resellers, and end users within the United States. These customers and end users use the products identified above to practice the inventions of the '576 Patent. The products identified above embody all, or a majority, of the elements of the infringed claims and are thus a material part of the patented invention and are not staple articles or commodities of commerce suitable for substantial noninfringing use. Stackpole knows that devices incorporating the Knock-off Valve into the Accused Pump infringes the '576 Patent. Stackpole knows that use of the Accused Pump infringes the '576 Patent. Stackpole is therefore liable for indirect infringement of the '576 Patent pursuant to 35 U.S.C. § 271(c).

85.     Unless enjoined by this Court, Stackpole will continue to infringe the

17

'576 Patent and Husco will continue to suffer irreparable har for which there is no adequate remedy at law. Accordingly, Husco is entitled to preliminary and/or permanent relief against such infringement pursuant to 35 U.S.C. § 283.

86.     As a result of Stackpole's infringement of the '576 Patent, Husco has been and continues to be irreparably injured in its business and property rights, and is entitled to recover damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

87.     Stackpole was notified of the '576 patent at least as early as September 18, 2013, when Plaintiff disclosed its "Patented Dual Spring System for controlling Pump Displacement" and its "Patented ball bearing system" to Defendant.

88.     Husco therefore is informed and believes, on the basis of such information and belief, alleges that Stackpole's infringement of the '576 Patent is willful and deliberate.  Accordingly, Husco is entitled to enhanced damages pursuant to 35 U.S.C. § 284 and to an award of attorney's fees and cost incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## COUNT II
## (INFRINGEMENT OF THE '008 PATENT)

89.     Plaintiff refers to and incorporates the allegations in Paragraphs 1 - 88, the same as if set forth herein.

90.     Stackpole has infringed and continues to infringe one or more claims of the '008 Patent by making, using, selling, offering for sale and/or importing into

the United States products and systems, including but not limited to the Knock-off Valve and Accused Pump without permission from Husco. Stackpole is liable for infringement of the '008 Patent pursuant to 35 U.S.C. § 271(a).

91.     Stackpole has induced and encouraged direct infringement of the '008 Patent by its customers, resellers and end users by directing them and encouraging them to make, use, sell, and offer to sell within the United States and/or import into the United States one or more devices that embody the '008 Patent and that incorporate the products identified above.  Stackpole therefore is liable for indirect infringement under 35 U.S.C. § 271(b).

92.     Stackpole has and continues to contributorily infringe and will continue to contributorily infringe one or more claims of the '008 Patent. The claims of the '008 Patent are directly infringed by Stackpole's and its customers, resellers, and end users within the United States. These customers and end users use the products identified above to practice the inventions of the '008 Patent. The products identified above embody all, or a majority, of the elements of the infringed claims and are thus a material part of the patented invention and are not staple articles or commodities of commerce suitable for substantial noninfringing use. Stackpole knows that devices incorporating the Knock-off Valve into the Accused Pump infringes the '008 Patent. Stackpole knows that use of the Accused Pump infringes the '008 Patent. Stackpole is therefore liable for indirect infringement of the '008 Patent pursuant to

35 U.S.C. § 271(c).

93.     Unless enjoined by this Court, Stackpole will continue to infringe the '008 Patent and Husco will continue to suffer irreparable har for which there is no adequate remedy at law. Accordingly, Husco is entitled to preliminary and/or permanent relief against such infringement pursuant to 35 U.S.C. § 283.

94.     As a result of Stackpole's infringement of the '008 Patent, Husco has been and continues to be irreparably injured in its business and property rights, and is entitled to recover damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

95.     Stackpole was notified of the '008 patent at least as early as September 18, 2013, when Plaintiff disclosed its "Patented Dual Spring System for controlling Pump Displacement" and its "Patented ball bearing system" to Defendant.

96.     Husco therefore is informed and believes, on the basis of such information and belief, alleges that Stackpole's infringement of the '008 Patent is willful and deliberate.  Accordingly, Husco is entitled to enhanced damages pursuant to 35 U.S.C. § 284 and to an award of attorney's fees and cost incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## **DEMAND FOR JURY TRIAL**

97.     Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Husco requests entry of judgment in its favor and against Defendants as follows:

(a) Declaring that the '576 and '008 Patents are valid and enforceable, and that Stackpole has infringed one or more claims of the '576 and '008 Patents;

(b) Declaring that Stackpole has willfully infringed the '576 and '008 Patents;

(c) Preliminary and/or permanently enjoining Stackpole, its officers, partners, employees, agents, parents, subsidiaries, affiliates, attorneys, and anyone acting in concert or participation with any of them, from further infringing, contributing to and/or inducing infringement of the Asserted Patents, in accordance with 35 U.S.C. § 283;

(d) Awarding Husco damages in an amount adequate to compensate Husco for Stackpole's infringement in accordance with 35 U.S.C. § 284;

(e) Awarding treble damages and/or exemplary damages due to Stackpole's willful misconduct under 35 U.S.C. § 284;

(f) Declaring that this is an exceptional case;

(g) Awarding Husco attorneys' fees and costs incurred by Husco in connection with this action under 35 U.S.C. § 285; and

(h)     Granting such other and further relief as this Court may deem just and

appropriate.


Dated:  June 6, 2023                              Respectfully Submitted,

                                                  BUTZEL LONG, P.C.

                                                  By:  /s/ Mitchell S. Zajac
                                                  Cynthia J. Haffey (P57352)
                                                  Mitchell S. Zajac (P82498)
                                                  150 W. Jefferson, Suite 100
                                                  Detroit, MI 48226
                                                  313-225-7000
                                                  haffey@butzel.com
                                                  zajac@butzel.com

                                                  Daniel Vivarelli (DC No. 482467)
                                                  1909 K Street, N.W., Suite 860
                                                  Washington, DC  20006
                                                  202-454-2800
                                                  vivarelli@butzel.com
                                                  Attorneys for Plaintiff